IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COACH, INC., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SUNFASTIC TANNING RESORT, et al. | : | No. 10-1626 |

MEMORANDUM

Legrome D. Davis, J.                                                                                November 9, 2011

  Plaintiffs Coach, Inc. and Coach Services, Inc. move for partial summary judgment (Doc. No. 37) as to the liability of Defendants Sunfastic Tanning Resort and Marlene Prendergrast for trademark counterfeiting, infringement, false designation of origin, and false advertising under the Lanham Trade-Mark Act, 15 U.S.C. §§ 1051-1127, see §§ 1114(1), 1125(a). Plaintiffs also move for summary judgment as to Defendants' liability for infringement under the U.S. Copyright Act, 17 U.S.C. §§ 101-1332, see §§ 106, 501. Jurisdiction is federal question. 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a). Defendants have not presented any probative evidence raising a genuine issue of material fact as to their liability. The motion will be granted and judgment will be entered as to liability in favor of Plaintiffs and against Defendants.

I. PROCEDURAL BACKGROUND AND SUMMARY JUDGMENT RECORD

  On April 13, 2010, Plaintiffs Coach, Inc. and Coach Services, Inc. ("Coach") commenced this action seeking money damages for Defendants' sale of counterfeit goods in violation of federal and state laws protecting trademarks, copyrights, and fair competition. By stipulation, all defendants were dismissed with prejudice except Defendants Marlene Prendergrast and Sunfastic Tanning Resort ("Sunfastic"), a tanning salon in Huntingdon Valley, Pennsylvania. Mar. 25, 2011 and Apr. 18, 2011 Orders, Doc. Nos. 34, 36. On April 23, 2011, Plaintiffs filed the

1

Amended Complaint.  Doc. No. 4.  On April 29, 2011, Coach moved for partial summary judgment as to the liability of Defendants Sunfastic and Prendergrast.[1]

Prendergrast admits that she sold handbags at Sunfastic "that had the Coach name and label on them."  Prendergrast Deposition Transcript, Mar. 24, 2011 ("MP Dep."),[2] 120:17-20.  On October 24, 2009, Richard Smith of ISC Associates, Inc., Coach's investigator, saw handbags and accessories bearing Coach trademarks, designs, and logos displayed at Sunfastic.  He purchased one of the handbags for $89.00 plus $5.34 tax.  He was given a sales receipt that recorded the sale of one "Coach handbag."  Am. Compl. ¶ 36; Sales receipt, Pls.' Mot. ¶ 6, Ex. C.  The handbag was a counterfeit.  Affidavit of Dayanara Y. Perez, Nov. 23, 2009 ("Perez Aff."), Pls.' Mot. ¶ 7, Ex. D, Doc. No. 37-2.  During this litigation, Prendergrast produced additional items bearing the Coach name, marks, designs, and logos:  two handbags, one swingpack, and one pair of sunglasses.  Coach's intellectual property assistant confirmed that these goods were also counterfeit.  Perez Aff., Pls.' Mot., Ex. E, Doc. No. 37-3.

The counterfeit items bore the Coach name and designs similar to those used by Coach, which are registered with the U.S. Patent and Trademark Office for a variety of goods and services.  Am. Compl. ¶ 25; Pls.' Mot. ¶¶1-3, Doc. No. 37.  Specifically, Coach owns the trademark registrations:  "COACH" name, "COACH LEATHERWARE EST. 1941 [Heritage Logo]" (with horse and carriage design), "CC & DESIGN (Signature C)," "COACH OP ART &

---

[1] In the motion, Plaintiffs present evidence and argument as to the claims for trademark counterfeiting, infringement, false designation of origin, and false advertising, and copyright infringement. (Am. Compl., Counts One-Four, Six).  Plaintiffs do not specifically address the trademark dilution claim. (Count Five).

[2] Excerpts of Prendergrast's March 24, 2011 deposition testimony are attached to Plaintiffs' Motion, Ex. G, Doc. No. 37-2 and Plaintiffs' Reply Br., Ex. A, Doc. No. 44.

Design," and "COACH & LOZENGE DESIGN." Am. Compl. ¶ 25. These marks are registered for use with fabrics, handbags, and sunglasses, among other accessories. Id. Am. Compl. ¶¶ 26-30. Coach also owns the copyright registrations for the "Coach Op Art Design," "Horse & Carriage Design," and "CC & Design (Signature C)." Am. Compl. ¶¶31-32; Pls.' Br. at 18, Ex. H, Doc. No. 37-2. Defendants have not presented any evidence to the contrary.

According to Coach, the marks, designs, and logos in this case have been in use for more than five consecutive years subsequent to the date of registration. Am. Compl. ¶¶ 25, 26; Pls.' Br. at 15, Doc. No. 37 ("the marks in question have been registered as early as 1963 in some cases"); Pls.' Mot. ¶ 1, Doc. No. 37 ("Coach and their predecessors have, since approximately 1941, used the name and mark "COACH" . . . in the manufacture, advertisement, marketing, and sale of apparel, accessories, and luxury goods."). Coach maintains that these trademarks and copyrighted works are well recognized by consumers. Am. Compl. ¶ 24, 29. Defendants have not presented any evidence to the contrary.

Prendergrast and Marion Zeno, Inc., a Pennsylvania corporation,[3] are both designated on an agreement as "the Purchaser" of the assets of Sunfastic. Nov. 30, 2001 Agreement, Pls.' Mot. ¶ 14, Ex. F, Doc. No. 37-2; MP Dep. 81:3-5. It is also recited: "The Purchaser, MZI desires to assume the operation of the Business . . . ." Id. at 1, ¶ 4. Prendergrast signed the agreement as president of Marion Zeno. Id. at 9; MP Dep. 81:13-18. Prendergrast is the sole owner and officer of Marion Zeno. MP Dep. 81:19-21. Prendergrast is also the sole owner, officer (treasurer), and employee of Sunfastic, a Pennsylvania corporation. MP Dep. 67:21-69:24, 134:6-16, 190:6-23; Defs.' Br., Doc. Nos. 38 & 39 at 7; Defs.' Answer, ¶¶ 5, 7, Doc. No. 19.

---

[3] Marion Zeno, Inc. was not named as a defendant party in this case.

The finances of Marion Zeno and Sunfastic, including a bank account, a credit card, and loans, are in both Prendergrast's name as an individual and one or the other of the corporations' names. MP Dep. 169:4-170:23, 171:14-173:6. Prendergrast's personal funds were used for Sunfastic's operations, and Marion Zeno's funds were used for Prendergrast's personal needs. MP Dep. 18:7-17, 67:20-69:24, MP Dep. 173:22-174:8, 175:9-176:11, 213:15-214:20. The record does not reflect any evidence that corporate formalities were ever observed for either Sunfastic or Marion Zeno. At deposition, Prendergrast could not recollect whether she was president of Marion Zeno until her memory was refreshed using her signature as "president" on the asset purchase agreement. MP Dep. 81:6-18.

According to Prendergrast, "Dave Greenstein" came into the Sunfastic store selling bags that had the Coach name and label on them. Greenstein showed the bags to Suzyn Buschner, who was employed as Sunfastic's store clerk at that time. Buschner, speaking on the phone to Prendergrast, told her the bags were " discontinued merchandise or closeouts" and "mostly Coach." Prendergrast delivered a check for the bags to the store, and Buschner later delivered the check to Greenstein in exchange for the bags. MP Dep. 120:17-121:12, 124:10-125:6, 126:13-23, 128:3-129:8, 132:17-24, 148:18-149:23. It is unclear how many bags or other items Greenstein delivered to Sunfastic or how many were eventually sold to the public. MP Dep. 165:12-21 ("I don't think it was that many.") The record establishes the sale of one bag to Smith.

In response to the instant motion, Defendants provide an account that differs from Prendergrast's deposition testimony. Defendants submit that a man delivered the "Coach products" to Prendergrast's girlfriend, Hope Stelweck, who was helping to mind the store but was not an employee. Defendants maintain that the October 24, 2009 sale of a handbag to Smith

4

was the only "Coach product" sold and it was sold by Hope Stelweck. Defs.' Brs. at 7-8, Doc. Nos. 38 & 39. In a May 12, 2011 affidavit, Stelweck affirmed:

> On September 21, 2009, a gentlemen [sic] walked into Sunfastic selling Coach products that he claimed were closeouts. I called Marlene, described the products, and suggested she should buy them. Based upon my recommendations, she dropped off a check the following day in the amount of $146.00, and I took delivery of the Coach products when the gentlemen returned.
>
> I continued to help Marlene [at the store] . . . and on October 24, 2009, a gentlemen walked into Tanfastic [sic] and purchased a Coach handbag for $89.00 plus tax.

Affidavit of K. Hope Stelweck. Def's Mot. ¶ 18, Ex. C, Doc. No. 39; MP Dep. 133:9-134:3; Prendergrast's check for $146.00, Def.'s Br., Ex. D, Doc. No. 39.

II.     ANALYSIS

Summary judgment is appropriate when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). In making this determination, "we must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Stratechuk v. Bd. of Educ., South Orange–Maplewood Sch. Dist., 587 F.3d 597, 603 (3d Cir. 2009) (citations and internal quotation marks omitted), cert. denied, 131 S. Ct. 72 (U.S. 2010). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A fact is "material" if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. The dispute is

not genuine if it involves only "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence at trial, it would be insufficient to permit the non-moving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, speculation, unsupported assertions or denials of its pleadings. Fed. R. Civ. P. 56(c)(1); Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001) (the non-moving party must "set forth specific facts showing the existence of such an issue for trial").

Section 32 of the Lanham Trade-Mark Act, 15 U.S.C. § 1114(1) proscribes trademark copies or counterfeits and infringement.[4] To establish a violation, "a plaintiff must prove that (1) the mark is valid and legally protectable, (2) it owns the mark, and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services." E.T. Browne Drug Co. v. Cococare Prods., Inc., 538 F.3d 185, 191 (3d Cir. 2008). "The first two requirements, validity and legal protectability, are proven where, as here, a mark was federally registered and has become 'incontestable' under . . . §§ 1058 and 1065." Fisons Horticulture,

---

[4] 15 U.S.C. § 1114(1) provides in part:

Any person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, [or] distribution . . . of any goods . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir. 1994) (footnote omitted). "If the mark has not been federally registered or, if registered, has not achieved incontestability, validity depends on proof of secondary meaning,[5] unless the unregistered mark is inherently distinctive." Id.

According to Coach, it owns valid registrations for the marks, designs, and logos in this case. Coach also maintains that these marks have been in use and registered for many decades and are now incontestable under Sections 8 and 15 of the Lanham Trade-Mark Act, 15 U.S.C. §§ 1058 and 1065. Coach further contends that these marks are incontestable because they have acquired secondary meaning and are well recognized by consumers. It is undisputed that Plaintiffs' goods enjoy a reputation of superior quality. Defendants have not presented any evidence to the contrary. Thus, the record does not disclose a genuine issue of material fact as to the whether Coach's trademarks are valid and legally protectable.

As to the third requirement for proof of a likelihood of confusion, "plaintiffs must show that consumers viewing the mark would probably assume the product . . . it represents is associated with the source of a different product . . . identified by a similar mark." Sabinsa Corp. v. Creative Compounds, LLC, 609 F.3d 175, 182 (3d Cir. 2010) (citing Checkpoint Sys., Inc. v.

---

[5] Our Court of Appeals has explained "secondary meaning" as follows:

> Secondary meaning exists when the trademark is interpreted by the consuming public to be not only an identification of the product, but also a representation of the product's origin. Secondary meaning is generally established through extensive advertising which creates in the mind of consumers an association between different products bearing the same mark. This association suggests that the products originate from a single source. Once a trademark which could not otherwise have exclusive appropriation achieves secondary meaning, competitors can be prevented from using a similar mark. The purpose of this rule is to minimize confusion of the public as to the origin of the product and to avoid diversion of customers misled by a similar mark.

E.T. Browne Drug Co. v. Cococare Prods., Inc., 538 F.3d 185, 199 (3d Cir. 2008) (quoting Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1228 (3d Cir. 1978) (citations omitted)).

Check Point Software Tech., Inc., 269 F.3d 270, 280 (3d Cir. 2001)). Our Court of Appeals has set forth factors which may indicate a likelihood of confusion. Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983). "'None of these factors is determinative . . . and each [relevant] factor must be weighed and balanced against the other.'" Sabinsa, 609 F.3d at 182-83 (quoting Checkpoint, 269 F.3d at 280).

The test under § 1114(1) for "likelihood of confusion" is essentially the same as the test under Section 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. § 1125(a)[6] for "likely to cause confusion." Section 1125(a) proscribes false designations of origin, false descriptions of fact, and false advertising to protect trademark holders from the promotion and sale of competing products likely to confuse consumers as to their source. Thus, a plaintiff must prove a confusing similarity between a counterfeit and the genuine item.

On the record presented here, Plaintiffs have established the requirements of both §§ 1114(1) and 1125(a). The plain language of the statute does not require a plaintiff to prove the defendant committed infringement in any particular amount, or with any degree of regularity, or with any knowledge, intent, or belief. See §§ 1114(1), 1125(a). Moreover, under the following Lapp factors that are relevant to this record, the "Coach" items placed on sale at Sunfastic were likely to create confusion concerning the origin of the goods.

---

[6] 15 U.S.C. § 1125(a) provides in part:

Any person who, on or in connection with any goods . . . uses in commerce any . . . name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – is likely to cause confusion . . . as to the origin of his or her goods, . . . or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another's goods, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The factors of mark similarity and mark strength strongly favor Coach. Photographs were taken of some "Coach" handbags that were displayed for sale at Sunfastic. Br. at 17, Doc. No. 37. These images depict bags closely similar in overall appearance, shape, and function to genuine Coach handbags. There is no dispute that all "Coach" accessories at Sunfastic incorporated closely similar Coach marks, designs, and logos. They gave the impression of being Coach accessories. Coach marks are commercially and conceptually strong. Coach has used its marks, designs, and logos over many decades. Coach products have enjoyed a longstanding, widely held reputation for superior quality in the marketplace for luxury goods.

Additional Lapp factors favor Coach. The record does not contain any evidence that Coach's use of its marks has occasioned any actual confusion with other competing goods. Furthermore, it is undisputed that Sunfastic targeted the same market to which Coach directed its sales efforts, the consuming public.

The Lapp factors of the price of the goods and the care and attention of purchasers at Sunfastic do not weigh in favor of either party as to the likelihood of confusion. Coach's expert, Dayanara Y. Perez, found that the price of the items on display for sale at Sunfastic were markedly below the average manufacturer's suggested retail price for similar genuine Coach goods. Pls.' Mot., Exs. D, E, Doc. No. 37-2 (e.g., Smith purchased a handbag for $89, whereas the MSRP for an authentic Coach handbag was $300). Perez also found that the workmanship and components of some items, such as hardware and linings, were not representative of authentic Coach goods. However, Defendants have not presented any evidence that the disparity in price and quality would have been apparent to over-the-counter purchasers at Sunfastic.

The Lapp factor of evidence of actual confusion weighs in favor of Coach. There is evidence that some individuals actually confused the "Coach" items at Sunfastic with genuine

9

Coach products.  It is undisputed that the items appeared to Buschner to be "mostly Coach."  Smith purchased one item, which was noted on the sales receipt as being a "Coach handbag."  Moreover, Defendants have not presented any evidence to refute the findings of Coach's expert, Perez, that the items were counterfeits.  "Counterfeits, by their very nature, cause confusion."  Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); see also Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987) (such goods are "an apparent attempt to capitalize upon the popularity of, and demand for, another's product").

      Prendergrast testified that she believed she was selling "discontinued merchandise" or "close-outs."  Her testimony favors Coach:  "Evidence of a defendant's intent is not a prerequisite for finding a Lanham Act violation; such evidence, however, weighs heavily in favor of finding a likelihood of confusion."  Sabinsa, 609 F.3d at 187.  Prendergrast chose to sell the accessories without any investigation, hoping to achieve in her words "a good deal."  MP Dep. 128:12-21, 148:4-17.  This is some evidence that she voluntarily ignored the counterfeit nature of the goods, intending to capitalize on Coach's goodwill.  A reasonable juror could conclude that she was at least reckless, given the price disparity between the goods delivered to Sunfastic and authentic Coach goods, and she should have inquired further before putting the items on sale at Sunfastic.

      The record does not contain any probative evidence that creates a genuine issue of material fact as to the likelihood of confusion.  The undisputed facts weigh heavily in favor of Coach so that any reasonable fact finder, weighing the Lapp factors properly, would find that Coach has demonstrated a likelihood of confusion about the true source and description of the "Coach" items on display and sold at Sunfastic.

The core of this dispute turns on Prendergrast's assertion that she should not be a defendant exposed to personal liability. According to Defendants, Marion Zeno purchased Sunfastic, and Prendergrast executed the asset purchase agreement solely as president of Marion Zeno. Defs.' Mots. ¶ 24, Doc. Nos. 38 & 39. They maintain that "there is absolutely no evidence that . . . Prendergrast ever conducted herself as anything other than an officer of Marian [sic] Zeno, Inc." Defs.' Br. at 9, Doc. Nos. 38 & 39. However, her role as president is not a shield from liability. Even assuming the truth of the assertions, no genuine dispute as to material facts is raised. The record establishes that Prendergrast's participation in placing the counterfeit items on sale is sufficient for her to be found a trademark and copyright infringer.

Our Court of Appeals instructs that "a corporate officer who actually and substantially participates in the corporation's act of trademark infringement . . . is personally liable even though he acted as an agent of the corporation rather than on his own behalf." Elec. Lab. Supply Co. v. Cullen, 977 F.2d 798, 807 (3d Cir. 1992) (citing Donsco, Inc. v. Casper Corp., 587 F.2d 602, 605-06 (3d Cir. 1978) (president who authorized and approved act of unfair competition amounting to false designation of origin held liable under § 1125(a)). "The fact that an officer is acting for a corporation also may make the corporation vicariously or secondarily liable under the doctrine of respondeat superior; it does not however relieve the individual of his responsibility." Donsco, 587 F.2d at 606. The rule also applies to copyright infringers. Id. (citing Columbia Pictures Indus., Inc. v. Redd Horne, Inc., 749 F.2d 154, 160-61 (3d Cir. 1984) (president and sole shareholder who knowingly participated in copyright infringement held liable, jointly and severally, with the corporate defendant)). Other jurisdictions are in accord on analogous facts. See, e.g., Tanning Research Labs., Inc. v. Worldwide Imp. & Exp. Corp., 803 F. Supp. 606, 609

(E.D.N.Y. 1992) (sole shareholders and officers held liable where neither individual submitted evidence controverting their participation in the sale of counterfeits); Polo Fashions, Inc. v. Gordon Grp., 627 F. Supp. 878, 889-90 (M.D.N.C. 1985) (officers of infringing company liable).

The record also establishes that Prendergrast acted to infringe Coach's copyrights. Plaintiffs have submitted uncontroverted evidence in regard to each element of the claim: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 203 (3d Cir. 2005) (quoting Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002)). Infringement occurs when a defendant violates an exclusive right of the copyright holder. 17 U.S.C. § 501(a). These rights include the right to reproduce the copyrighted work, prepare derivative works, distribute copies to the public by sale, and publically display the work. 17 U.S.C. § 106 (1)-(3),(5). A defendant's intent to infringe is not material. See Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 299 (3d Cir. 1991) (infringement can occur by an innocent sale or gift of copyrighted work to one person). A direct copyright infringement claim requires a plaintiff to allege "volitional conduct" on the part of the defendant. Parker v. Google, Inc., 242 Fed. App'x 833, 836 (3d Cir. 2007). A claim of contributory copyright infringement requires a plaintiff to allege: "(1) direct copyright infringement of a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) material contribution to the infringement." Id. at 837. One who, with knowledge of activity infringing a copyright, "induces, causes or materially contributes to the infringing activity of another, may be held liable as a 'contributory' infringer." Columbia Pictures, 749 F.2d at 160 (internal quotation marks and citations omitted).

The record does not contain any probative evidence creating a genuine issue of material fact as to the claim for copyright infringement. Defendants have not marshaled any evidence to challenge Plaintiffs' ownership and registration their copyrights for the original "Coach Op Art Design," "Horse & Carriage Design," and "CC & Design (Signature C)." For the same reasons discussed above, ordinary consumers would recognize the designs used on the counterfeits at Sunfastic as being closely similar, if not practically identical, to Coach's copyrighted works.

Defendants contend that Prendergrast "had no personal involvement with the purchase or sale of the Coach products, and authorized no one to do so." Defs.' Br. at 9, Doc. Nos. 38 & 39. Defendants do not present any evidence to support this assertion. Moreover, Prendergrast testified at deposition that she authorized Buschner to purchase the "Coach" items that later proved to be counterfeits. She wrote a check for $146 and delivered the check to the store to pay for them. It is immaterial whether Buschner, an employee of Sunfastic, or Stelweck, a friend of Prendergrast, or someone else at the store executed the transaction and eventually sold at least one handbag. The record establishes that Prendergrast chose to place the items on sale to the public and acted to do so. This is sufficient actual participation to make her personally liable as a trademark infringer under §§ 1114(1) and 1125(a) and as a copyright infringer under §§ 106, 501.

Prendergrast's liability as an active participant is distinct from any liability that might arise from "piercing the corporate veil," as those terms are used here by the parties. Plaintiffs propose that Prendergrast should be held personally liable as the alter ego of Marion Zeno and Sunfastic. However, it is unnecessary to reach the question whether she should be held liable as an owner because Marion Zeno or Sunfastic are less than bona fide independent corporate

13

entities. Prendergrast is personally liable under the trademark and copyright statutes as an actor who directly infringed upon Coach's protected rights.

An appropriate order accompanies this memorandum.


BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.